# Supreme Court of Texas

No. 23-0755

In re State Farm Mutual Automobile Insurance Company
and Lindsey Nicole Dessart,

*Relators*

On Petition for Writ of Mandamus

**Argued October 3, 2024**

JUSTICE DEVINE delivered the opinion of the Court.

JUSTICE SULLIVAN filed a concurring opinion, in which
Chief Justice Blacklock, Justice Devine, and Justice Young joined.

Underinsured motorist (UIM) coverage protects insureds when
damages from a vehicle collision exceed an at-fault motorist's liability
policy limits. Unlike most first-party insurance policies, UIM policies
condition benefits on the legal entitlement to recover from the other
motorist under applicable tort law. In allowing insureds to sue their
own insurer to recover UIM benefits without taking legal action against
the tortfeasor, our case law has constructed a distinctive procedure for
UIM litigation. A "car crash" trial typically determines the third-party
motorist's liability and the insured's damages, and the insured must
obtain a favorable judgment as a condition precedent to UIM coverage.

These judicial determinations are also necessary predicates to recover damages on extracontractual Insurance Code claims, such as bad-faith claims, that flow from the insured's right to UIM benefits. As a result, such extracontractual claims are usually litigated after the car-crash trial in a bifurcated proceeding or severed and abated while that initial action is pending.

The issues in this original proceeding are whether, in the first part of a bifurcated UIM proceeding, an insured is entitled to conduct discovery on her extracontractual claims and depose the insurer's corporate representative. We hold that the trial court abused its discretion by denying the insurer's motions to abate the extracontractual claims and to quash the noticed deposition while the insured's declaratory-judgment car-crash claims are pending. Inquiry into extracontractual matters is improper before an insured has established her entitlement to UIM benefits. Because the outcome of the car-crash trial may moot those claims, an insurer has a substantial right to defer discovery and litigation costs in the interim. And when, as here, a UIM insurer with no personal knowledge about the underlying car-crash issues has produced all nonprivileged claim documents and substantiated, with evidence, its proportionality complaints as to a noticed deposition, the deposition notice must be quashed. Because there is no adequate remedy by appeal, we conditionally grant the insurer's petition for writ of mandamus.[1]

---

[1] The insurer also seeks mandamus relief on two other issues, asserting that the trial court abused its discretion by not quashing the deposition notice of the insurer's claims adjuster and by limiting discovery into the insured's

2

## I. Background

Mara Lindsey alleges that Carlos Pantoja negligently rear-ended her vehicle while she was stopped at a red light, causing her personal injuries. Among other damages, she seeks compensation for $56,751.55 in past medical expenses and an estimated $263,691.15 in future medical expenses. After accepting a settlement offer from Pantoja's insurer for his $50,000 policy limit, Lindsey submitted a claim to her own insurer, State Farm, to recover under her UIM policy, which has a $100,000 limit.[2] Dissatisfied with State Farm's offer of $689.58 to settle the claim, Lindsey sued State Farm under the Uniform Declaratory

medical records. As to the former, the claims adjuster is a named defendant only as to the extracontractual claims, and it is undisputed that this deposition seeks information relevant only to those claims, which we have determined must be abated. *See In re USAA Gen. Indem. Co.* (*USAA II*), 624 S.W.3d 782, 791 (Tex. 2021) (holding that a plaintiff may not obtain discovery on abated extracontractual claims under the guise of investigating a claim for benefits). As to the latter, the insured's counsel represents that because *In re Liberty County Mutual Insurance Co.*, 679 S.W.3d 170 (Tex. 2023), addressed similar arguments, the insured has withdrawn her objections to the insurer's medical-records request, "which renders that issue moot." The insurer points out that the order is still in effect and requests that we instruct the trial court to vacate it. We are confident that the trial court will provide the relief the insurer seeks on these two matters; a writ will issue only if it does not.

[2] As is common, Lindsey's UIM policy includes a "settlement without consent" exclusion clause and requires an insured to obtain consent before accepting a settlement offer from the other motorist's insurer, which State Farm provided. *See Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692-93 (Tex. 1994) (holding that a settlement-without-consent exclusion may allow an insurer to escape UIM liability when the insured's settlement with the tortfeasor prejudices the insurer). However, a settlement with the alleged tortfeasor does not establish UIM coverage "because a jury could find that the other motorist was not at fault or award damages that do not exceed the tortfeasor's liability insurance." *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006).

3

Judgments Act (UDJA).[3] Lindsey sought declarations regarding Pantoja's liability as an underinsured motorist, the amount of her covered damages, the applicability of her UIM policy, and her entitlement to benefits under that policy. Lindsey also sued State Farm and its claims adjuster for Insurance Code violations, alleging they failed to attempt a good-faith settlement of her UIM claim, among other statutory violations.[4]

State Farm moved to segregate the extracontractual Insurance Code claims—either through separate trials in the same cause or by severance[5]—and to abate those claims until the UDJA claims are resolved. In its motion, State Farm argued that (1) segregation is necessary because litigating the extracontractual claims would require "the injection" of privileged matters—settlement offers, investigative claim files, and advice of counsel—that would be highly prejudicial to its position on the UDJA claims and (2) limited judicial and party resources would be potentially wasted in conducting discovery and litigating extracontractual claims that could be rendered moot by the outcome of the car-crash trial. In response, Lindsey agreed that the claims should be tried separately. She argued, however, that (1) our recent decision in *In re State Farm Mutual Automobile Insurance Co.*[6] requires bifurcation

---

[3] *See* TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011.

[4] *See* TEX. INS. CODE §§ 541.060(a)(2), (a)(3), (a)(7), 542.003(b)(3)–(b)(5), .057(a).

[5] Although the motion is titled "Motion for Severance and Abatement," State Farm sought segregation of the claims under either Rule 41 or Rule 174(b). *See* TEX. R. CIV. P. 41 (severance), 174(b) (separate trials).

[6] 629 S.W.3d 866 (Tex. 2021).

when the plaintiff does not bring a breach-of-contract claim and (2) a "bifurcated trial" is a single trial conducted in two phases before the same jury.[7]

Around the same time, Lindsey served a notice of intent to take the oral deposition of a State Farm corporate representative. The notice identified the following topics: (1) whether Pantoja was an underinsured motorist, (2) the amount and basis for State Farm's valuation of Lindsey's damages, and (3) State Farm's claims, defenses, and legal and factual contentions regarding the collision's cause, the nature and extent of Lindsey's alleged injuries and damages, and other causes for Lindsey's asserted injuries and damages. After State Farm produced 1,188 pages of responsive documents, including all nonprivileged documents in its claim file, the insurer raised proportionality complaints in a motion to quash the deposition notice under Rule 192.4.[8] Shortly before the hearing on the motion, State Farm submitted an unsworn declaration from its claim specialist, Todd Dauper. In his declaration, Dauper discussed the burden of the proposed deposition and, to narrow the disputed issues, stipulated on State Farm's behalf that (1) Lindsey's UIM policy with up to $100,000 in bodily injury benefits was in full force and effect at the time of the collision and (2) under that policy, Lindsey

---

[7] *See id.* at 877 (citing TEX. R. CIV. P. 174(b)); *In re USAA Gen. Indem. Co. (USAA I)*, 629 S.W.3d 878, 887 (Tex. 2021) ("A bifurcated trial is *one trial* in which one jury decides multiple questions in different phases.").

[8] *See* TEX. R. CIV. P. 192.4 (providing that a court should limit discovery methods if (1) "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," or (2) "the burden or expense of the proposed discovery outweighs its likely benefit").

5

is a covered person, Pantoja is an underinsured motorist,[9] and the collision constitutes an accident. Lindsey did not file a response to the declaration, but at the hearing, she argued that she is entitled to depose the named defendant and that the deposition is proportionate because it is limited "only to the claims and defenses that [State Farm is] going to assert at trial."

The trial court denied State Farm's motions to quash and to segregate and abate the claims, stating in its order that "the case will proceed as outlined by the Texas Supreme Court in *In re State Farm*." The court of appeals denied State Farm's mandamus petitions without substantive explanation.[10] Now, State Farm petitions this Court for mandamus relief ordering the trial court to abate Lindsey's extracontractual claims and quash the deposition notice of its corporate representative.

## II. Discussion

Mandamus relief is an extraordinary remedy that will issue only if the trial court clearly abused its discretion and the relator has no adequate remedy by appeal.[11] A trial court has no discretion to determine what the law is, even when the law is unsettled, and abuses its discretion when its rulings are arbitrary, unreasonable, or made

---

[9] At the hearing, State Farm's counsel clarified that Pantoja was "underinsured to an extent."

[10] 708 S.W.3d 277 (Tex. App.—Dallas Aug. 30, 2023) (motion to quash); 698 S.W.3d 588 (Tex. App.—Dallas Aug. 30, 2023) (motion to abate following severance or bifurcation).

[11] *State Farm*, 629 S.W.3d at 872.

6

without reference to guiding legal principles.[12]  To determine whether an appellate remedy is adequate, we balance "the benefits of mandamus review against the detriments."[13]  We conclude that, here, State Farm has met this rigorous standard.

## A. The Distinctive Nature of UIM Litigation

To provide context to the parties' dispute, we begin with a brief discussion of the UIM framework and how our precedent has developed around "the distinctive nature of UIM litigation."[14]  By statute:

> [UIM] coverage must provide for payment to the insured of all amounts that the insured is *legally entitled to recover* as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.[15]

In this provision, "legally entitled to recover" is a term of art,[16] and UIM policies—including the one here—commonly track this statutory language.[17]

---

[12] *See In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023); *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017).

[13] *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008).

[14] *USAA I*, 629 S.W.3d at 886 n.27.

[15] TEX. INS. CODE § 1952.106 (emphasis added).

[16] *USAA I*, 629 S.W.3d at 884.

[17] *See, e.g.*, *State Farm*, 629 S.W.3d at 875 (noting that "[t]he policies at issue here employ similar 'legally entitled to recover' language"); *Brainard*, 216 S.W.3d at 812 (describing how the language of the UIM policy closely tracked the statutory language).

In *Brainard v. Trinity Universal Insurance Co.*, we construed "legally entitled to recover" to mean that "the UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and [UIM] status of the other motorist," "utiliz[ing] tort law" to make those determinations.[18] To obtain the predicate judgment, the insured may sue the insurer directly without suing the motorist.[19] If this direct action establishes that the at-fault motorist's insurance policy is insufficient to cover the insured's damages, the insurer's contractual duty to pay UIM benefits arises.[20] No contractual duty to pay exists until the trial court signs the requisite judgment, so unlike a typical contract case in which the judgment determines a prior contractual obligation, it is the UIM judgment that *triggers* the payment obligation.[21]

---

[18] 216 S.W.3d at 818. By requiring an insured to obtain a judgment, *Brainard* clarified and expanded on our earlier construction of the statutory phrase as meaning "no obligation to pay the [UIM] claim existed until *the jury established* [the third party's] liability." *Henson v. S. Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 654 (Tex. 2000) (emphasis added); *see USAA I*, 629 S.W.3d at 885 ("[T]he judgment—not the verdict—establishes the amount an insured is 'legally entitled to recover' for purposes of calculating UIM benefits.").

[19] *USAA I*, 629 S.W.3d at 880. Alternatively, the insured can sue the underinsured motorist. If the insured obtains the insurer's written consent, the negligence judgment would be binding on the insurer for purposes of the insurer's liability under the UIM policy; but without such consent, the insured would have to relitigate the issues of liability and damages in a direct action against the UIM insurer. *Id.*

[20] *USAA II*, 624 S.W.3d at 788.

[21] *Brainard*, 216 S.W.3d at 818; *see Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 270 (Tex. 2021) ("A judgment establishing liability and the underinsured status of the other motorist are thus conditions precedent to UIM coverage under *Brainard*."). In a post-submission letter, Lindsey cites a recent

8

By effectively foreclosing an actionable breach-of-contract claim before an insured has secured the predicate judgment,[22] *Brainard* has left UIM litigants uncertain about how to establish their legal entitlement to recover damages from a third-party motorist. Post-*Brainard*, many have still sued their insurer for breach of contract while others have brought UDJA, extracontractual, or some combination of these claims.[23] Courts of appeals responded to *Brainard* by routinely ordering trial courts to sever extracontractual claims from breach-of-contract claims and abate the former when the insurer had offered to settle the insured's UIM claim.[24]

---

concurring opinion from the Second Court of Appeals inviting the Court to revisit *Brainard*. *See In re Progressive Cnty. Mut. Ins. Co.*, No. 02-25-00039-CV, 2025 WL 450707, at *2 (Tex. App.—Fort Worth Feb. 10, 2025, orig. proceeding [mand. denied]) (Birdwell, J., concurring) (op. filed Mar. 20, 2025). We decline the invitation to do so here because (1) Lindsey did not request in either her briefing or at oral argument that we overrule *Brainard* and (2) her letter fails to address any of the considerations relevant to overruling precedent. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 263 (Tex. 2022) (noting that departures from precedent should be rare and must be carefully considered in light of the precedent's correctness and the underlying purposes of *stare decisis*: efficiency, fairness, and legitimacy).

[22] *See Brainard*, 216 S.W.3d at 818 ("[T]he insurer's contractual obligation to pay benefits does not arise until liability and damages are determined.").

[23] *See, e.g.*, *Irwin*, 627 S.W.3d at 266 (UDJA claim); *USAA II*, 624 S.W.3d at 785 (UDJA and contract claims); *State Farm*, 629 S.W.3d at 870 (extracontractual claims).

[24] *See State Farm*, 629 S.W.3d at 875-77 & n.4 (collecting cases); *see also USAA II*, 624 S.W.3d at 786 n.1 (noting that when extracontractual claims are asserted, "they are typically severed and abated pending resolution of the contractual claims").

In 2021, we decided a quartet of cases that helped to clarify confusion regarding the litigation process in a direct action against a UIM insurer. First, *State Farm* addressed the procedure for when an insured brings only extracontractual claims with no other claim to support severance and abatement.[25] We held that "although the procedural machinations may be slightly different," "the logic of the commonly applied sever-and-abate rule" controls and requires bifurcation of the issues.[26] In other words, the insured must still succeed in an initial UIM-coverage trial before litigating the merits of the extracontractual claims.[27] Next, *In re USAA General Indemnity Co.* (*USAA I*) elucidated the meaning of "bifurcation."[28] In that case, an insured sued both the other motorist and the UIM insurer, and the trial court ordered the claims against the insurer to be "abated and bifurcated."[29] The general term "bifurcate," we observed, contemplates different types of bifurcation within the same lawsuit: for example, a "bifurcated trial" would be "*one trial* in which one jury decides multiple

---

[25] 629 S.W.3d at 870, 877 (noting the insureds' argument that "there is no breach-of-contract claim to 'sever' and no claim to 'abate'"); *see* TEX. R. CIV. P. 41 (allowing for severance); *infra* note 37.

[26] *State Farm*, 629 S.W.3d at 877-78; *see* TEX. R. CIV. P. 174(b) (authorizing a separate trial of "any separate issue").

[27] *State Farm*, 629 S.W.3d at 870, 877 ("Just as an initial 'car crash' trial is typically required to determine the underinsured motorist's liability and the amount of damages when the insured brings both breach-of-contract and Insurance Code claims, insureds who bring only Insurance Code claims seeking policy benefits as damages must also succeed in an initial 'car crash' trial in order to lay the predicate for their statutory claims.").

[28] 629 S.W.3d at 887.

[29] *Id.* at 881.

questions in different phases" while "bifurcated *trials*" are "separate *trials* . . . involv[ing] a separate jury."[30] Looking to the trial court's order, we held that it "did not separate the case into two trial phases before the same jury"; rather, it ordered two trials with separate juries.[31] After that, *Allstate Insurance Co. v. Irwin* recognized the UDJA as a procedural vehicle for an insured to obtain a judgment directly against a UIM insurer on the other motorist's liability and the insured's damages.[32] In doing so, we clarified what was implicit in *Brainard*: a breach-of-contract claim for failure to pay UIM benefits is not actionable until the insured obtains a judgment establishing coverage.[33] Finally, *In re USAA General Indemnity Co.* (*USAA II*) considered whether an insurer was entitled to quash a corporate representative's noticed deposition in a UIM-coverage UDJA action when the insurer lacks personal knowledge of the relevant car-crash facts.[34] We held that these relevance considerations narrow the permissible scope of questioning

---

[30] *Id.* at 887 & n.29 ("The general definition of 'bifurcate' . . . contemplates any type of bifurcation: 'To separate into two parts, esp[ecially] for convenience . . . . Multiple aspects of litigation, such as discovery, motions, defenses, trial, and jury deliberations, may be bifurcated to save time, reduce jury confusion, or achieve other benefits, with or without the same jury hearing both bifurcated parts.'" (alteration in original) (quoting *Bifurcate*, BLACK'S LAW DICTIONARY (11th ed. 2019))).

[31] *Id.* at 882 & n.2.

[32] 627 S.W.3d at 265-66.

[33] *Id.* at 271 (holding that under *Brainard*, "the insurance carrier's failure to pay is not an actionable breach of contract until the carrier is bound by an appropriate judgment").

[34] 624 S.W.3d at 785.

11

but do not categorically foreclose a representative's deposition.[35] We nevertheless intimated that, if the insurer's motion to quash had been supported by evidence, proportionality concerns might have foreclosed the deposition in the coverage action.[36]

With this legal background in mind, we now address the parties' dispute.

## B. Abatement

We first consider whether State Farm is entitled to an abatement of Lindsey's extracontractual claims while her UDJA claims are determined in the first phase of the bifurcated proceeding. The parties agree that (1) the trial court had discretion to try the claims separately within the same lawsuit rather than severing the extracontractual claims[37] and (2) the predicate UDJA claims should be tried first to avoid

---

[35] *Id.* at 790-91.

[36] *Id.* at 792-93.

[37] *See* TEX. R. CIV. P. 174(b) ("The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim . . . ."); *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982) (noting that a trial court has wide discretion in managing its docket to comply with its "duty to schedule its cases in such a manner as to expeditiously dispose of them"). As we have explained, "[a] severance divides the lawsuit into two or more separate and independent causes" while "[a]n order for a separate trial leaves the lawsuit intact but enables the court to hear and determine one or more issues without trying all controverted issues at the same hearing." *Hall v. City of Austin*, 450 S.W.2d 836, 837-38 (Tex. 1970). A severance is proper when "(1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of an independently asserted lawsuit, and (3) the severed claim is not so interwoven with the remaining action that [they] involve the same facts and issues." *State v. Morello*, 547 S.W.3d 881, 889 (Tex. 2018). Thus, severance of a single cause of action into two parts is improper, as is severance of two or more causes of action involving the same facts and issues.

12

prejudice.[38]   But they part company regarding abatement of the extracontractual claims.   State Farm argues that abatement is a straightforward extrapolation from *State Farm*'s conclusion that "the logic of the commonly applied sever-and-abate rule" necessitates a bifurcated UIM proceeding when only extracontractual claims are brought.[39]   We agree that the same logic entails that such claims must be abated when predicate UDJA claims are to be tried first.   As we explained in *State Farm*, in a suit for UIM benefits, the rationale for abating extracontractual claims is, in part, to avoid needlessly incurring expenses to litigate issues that may ultimately be rendered moot.[40]

We are unpersuaded by Lindsey's various arguments for why the "abate" aspect of the rule's logic should not apply.   First, Lindsey interprets *State Farm* as requiring a bifurcated trial with a single jury, which would make abatement infeasible given the inadequate time to conduct discovery while holding the same jury for the second phase.   But

---

*Sealy Emergency Room, L.L.C. v. Free Standing Emergency Room Managers of Am., L.L.C.*, 685 S.W.3d 816, 822 (Tex. 2024).

[38] *See State Farm*, 629 S.W.3d at 877 ("Requiring State Farm to litigate its liability for UIM policy benefits alongside its liability for extracontractual claims would unduly prejudice the insurer and amounts to an abuse of discretion by the trial court" because "'[a]bsent [bifurcation], an insurer is presented with a 'Catch-22' in that its decision to admit or exclude evidence of a settlement offer jeopardizes the successful defense of the other [issue].'" (alteration in original) (quoting *In re State Farm Mut. Auto. Ins. Co.*, 395 S.W.3d 229, 234 (Tex. App.—El Paso 2012, orig. proceeding))); *cf. Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (concurring with decisions requiring severance in bad-faith cases when the insurer made "a settlement offer on the entire contract claim").

[39] 629 S.W.3d at 877.

[40] *Id.* at 876.

this misconstrues our opinion, which contemplated two separate trials under Rule 174(b), not a single bifurcated trial.[41] The question pointedly posed in that case was whether the insurer "is entitled to bifurcated *trials*, which would consist of (1) initial 'car crash' trials" and, "if the insureds succeed at the initial trials, (2) trials of the insurance code claims."[42] By concluding that the insurer was entitled to these separate *trials*, we implied that this bifurcation usually would involve different juries, thereby allowing an adequate time for discovery on extracontractual matters if an insured is successful in the initial car-crash trial.[43] Notably, one of the main rationales for requiring bifurcation would be nugatory if, as Lindsey proposes, the same jury would hear both claims in two phases of a single trial: the insurer would then be "required to put forth the effort and expense of conducting discovery, preparing for trial, and conducting voir dire on . . .

---

[41] Rule 174(b) uses the term "separate trials" and does not mention bifurcation. TEX. R. CIV. P. 174(b). We first discussed a single bifurcated trial when we described, but declined to adopt, a Wyoming process for punitive-damages cases. *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988); *see id.* at 474-75 (Gonzalez, J., dissenting) (describing the "bifurcated trial procedure"). Six years later, we reversed course and adopted a bifurcated-trial process under Rule 174(b) with the same jury deciding both liability and punitive damages, which was later enacted into statute. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 29-30 (Tex. 1994); *see* TEX. CIV. PRAC. & REM. CODE § 41.009. At oral argument, Lindsey's counsel acknowledged that *Moriel*'s concerns about requiring the same jury to hear both liability and punitive-damages issues do not apply to Lindsey's distinct UDJA and extracontractual claims.

[42] *State Farm*, 629 S.W.3d at 875 (emphasis added).

[43] *See id.* at 878; *see also USAA I*, 629 S.W.3d at 887 ("Whether termed as bifurcated *trials* or as separate *trials*, the trial court ordered two trials, each of which would involve a separate jury[.]").

14

extra-contractual claims that could be rendered moot by the portion of the trial relating to breach of contract for [UIM] benefits."[44] We explained that, in the UIM context, trial courts should protect the insurer's "*substantial right* not to undergo the expense of litigating and conducting discovery on issues that ultimately may be unnecessary because of the result of the underlying tort case."[45]

Lindsey next attempts to cabin the rule's application by asserting that courts of appeals have historically invoked the "commonly applied

---

[44] *State Farm*, 629 S.W.3d at 876 (quoting *In re Germania Ins. Co.*, No. 13-18-00102-CV, 2018 WL 1904911, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2018, orig. proceeding)); *see id.* ("[B]ifurcation tends to preserve judicial resources. . . . The insureds' statutory claims need not be considered at all if State Farm has no duty to pay under their policies.").

[45] *Id.* (emphasis added) (quoting *In re Colonial Cnty. Mut. Ins. Co.*, No. 01-19-00391-CV, 2019 WL 5699735, at *5 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, orig. proceeding)). In *State Farm*, abatement of the extracontractual claims would not protect the insurer's "substantial right" because the insureds raised no other claims. *Id.* at 877 (noting that the insureds contend there is "no claim to 'abate'"); *see Speer v. Stover*, 685 S.W.2d 22, 23 (Tex. 1985) ("[S]ustaining a plea in abatement requires that *the claim be abated* until removal of some impediment." (emphasis added)); *Tex. Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967) ("[A] plea in abatement, if sustained, would require *an abatement of the claim or cause of action* until some obstacle to its further prosecution was removed." (emphasis added)). Although a trial court has the power to limit discovery based on the needs and circumstances of the case, *see* TEX. R. CIV. P. 192.4 & cmt. 7, the parties in that case did not join issue on limiting discovery through other means. And after our *State Farm* decision, the underlying trial courts had no need to do so because the insureds added UDJA claims, consistent with *Irwin*, and then agreed to have their extracontractual claims abated until after the initial car crash trials. *See Dodds v. State Farm Mut. Auto. Ins. Co.*, No. CC-19-01423-C (Dall. Cnty. Ct. at Law No. 3, Tex. Oct. 11, 2021) (Order to Abate Extra Contractual Claims); *Nicastro v. State Farm Mut. Auto. Ins. Co.*, No. CC-17-05914-D (Dall. Cnty. Ct. at Law No. 4, Tex. July 23, 2021) (Order Granting Abatement and Separate Trials).

15

sever-and-abate rule" only when the insured brought breach-of-contract claims, not UDJA claims. Rejecting this same argument in *State Farm*, we recognized that the rule's logic applies even though "the procedural machinations may be slightly different."[46] Although a UDJA claim is a different procedural vehicle than a breach-of-contract claim, it is not materially different for purposes of applying the rule's logic in this context.[47] A declaratory judgment under the UDJA "is simply the remedy for resolving this [UIM] contractual dispute."[48]

---

[46] 629 S.W.3d at 877 (rejecting the insureds' argument that "their cases should be treated differently because they brought only Insurance Code claims" and "all the court of appeals cases cited [as applying the sever-and-abate rule] ar[o]se from cases involving both breach-of-contract claims and Insurance Code claims").

[47] *See id.* at 870, 877 ("[A]lthough the plaintiffs' claims in these cases are not labeled breach of contract, they nevertheless must establish State Farm's liability under their insurance policies as a prerequisite to recovery on their Insurance Code claims. . . . While [the insureds] pleaded their cases unlike past UIM plaintiffs, the showings they must make in order to recover are the same showings required of other UIM plaintiffs who pleaded both breach-of-contract and statutory claims[.]").

[48] *Irwin*, 627 S.W.3d at 270. Lindsey's argument also ignores the historical fact that, in 2021, *Irwin* authorized the UDJA as a proper vehicle to obtain the requisite judicial determinations; before then, the standard practice was to bring breach-of-contract claims. Since *State Farm* and *Irwin*, our courts of appeals and federal district courts have applied the sever-and-abate rule to abate extracontractual claims while UDJA claims are pending. *See Pak v. State Farm Mut. Auto. Ins. Co.*, No. 02-23-00485-CV, 2024 WL 191226, at *1 n.3 (Tex. App.—Fort Worth Jan. 18, 2024, no pet.); *In re Allstate Fire & Cas. Ins. Co.*, No. 03-21-00515-CV, 2022 WL 120263, at *3 (Tex. App.—Austin Jan. 12, 2022, orig. proceeding); *see also Fluegal v. Allstate Fire & Cas. Ins. Co.*, No. 1:22-CV-00908-SH, 2024 WL 2852506, at *2 (W.D. Tex. June 4, 2024); *Houston v. United Fin. Cas. Co.*, No. 3:21-CV-00367, 2023 WL 4198872, at *2 (S.D. Tex. June 27, 2023); *Sotello v. Allstate Fire & Cas. Ins. Co.*, No. 5:20-CV-1303-OLG, 2021 WL 8055630, at *3 (W.D. Tex. May 27, 2021).

Finally, Lindsey asserts that a sever-and-abate or bifurcate-and-abate rule in the UIM context runs afoul of our 1996 opinion in *Liberty National Fire Insurance Co. v. Akin*.[49] In that case, which concerned a homeowner's insurance policy, not a UIM policy, we declined to endorse a similar "special rule" for *all* first-party bad-faith insurance cases and instead left the decision to sever and abate bad-faith claims to the trial court's discretion.[50] *State Farm*, on the other hand, implicitly recognized that the "unique" character of UIM litigation is conducive to a sever- or bifurcate-and-abate rule for extracontractual claims.[51] This follows from our reasoning that unless the insured alleges independent damages resulting from the insurer's violations of the Insurance Code, the insured "does not suffer legally cognizable damages" for those claims until she "was actually owed benefits under the policy."[52] For most first-party insurance policies,

---

[49] 927 S.W.2d 627 (Tex. 1996).

[50] *Compare id.* at 628, 630 (noting that "the dissent urges an inflexible rule that would deny the trial court all discretion and which would require severance in every case, regardless of the likelihood of prejudice" and "would carve out a special rule for bad faith insurance cases"), *with id.* at 631 (Abbott, J., dissenting) ("[T]he better rule would be to require a trial court to segregate breach of contract claims and bad faith claims in every case in which a party requests that the claims not be tried together.").

[51] *See* 629 S.W.3d at 875, 877.

[52] *Id.* at 874-75 & n.3. We left open the possibility that the refusal to settle in violation of the Insurance Code could cause damages independent of an insured's entitlement to policy benefits, which Lindsey does not allege. *Id.*; *see USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018) (recognizing that "a successful independent-injury claim would be rare, and we in fact have yet to encounter one"). We also did not resolve whether a UIM insurer's liability could become "reasonably clear" to trigger its statutory

including the one considered in *Akin*, the policy alone dictates when the insured was actually owed benefits.[53] For a UIM policy, in contrast, the insured is actually owed benefits *only* when she obtains the requisite judgment. Thus, a sever- or bifurcate-and-abate rule for the distinctive UIM context is consistent with *Akin*.

Of course, litigants are "entitled to full, fair discovery within a reasonable period of time."[54] A sever- or bifurcate-and-abate rule will inevitably result in some delay while an insured pursues a judgment in the car-crash trial. But the ensuing delay is not unreasonable given that (1) a favorable judgment for the insured is a condition precedent to UIM coverage and a necessary predicate for recovery on extracontractual claims, (2) the result of the initial trial may moot those claims, and (3) judicial and party resources may be preserved that would otherwise be unnecessarily expended.[55]

We acknowledge Lindsey's dismay that if an insured must wait until all appeals from the initial car-crash trial are exhausted, years "may have passed before a trial court can *begin* to consider the extracontractual claims." But that concern is unfounded. In a

---

good-faith settlement obligations before an insured obtains a judgment establishing UIM coverage. *State Farm*, 629 S.W.3d at 875 n.3. As this question is not presented here, we once again leave it for another day.

[53] *See Brainard*, 216 S.W.3d at 818 ("Unlike many first-party insurance contracts, in which the policy alone dictates coverage, UIM insurance utilizes tort law to determine coverage.").

[54] *Able Supply Co. v. Moye*, 898 S.W.2d 766, 773 (Tex. 1995); *see* TEX. R. CIV. P. 192.3(a) (describing the general right to discovery).

[55] *See State Farm*, 629 S.W.3d at 876.

18

bifurcated proceeding, the judicial determination on the initial trial is interlocutory and not appealable as of right before a successful insured may proceed to litigate her extracontractual claims.[56]  And if the trial court exercises its discretion to sever instead of bifurcate the claims, *Akin* instructs that a trial court need not abate the extracontractual claims until all appeals on the policy-coverage claims are exhausted because "a trial court judgment is final despite the pendency of an appeal" for the purposes of issue or claim preclusion.[57]

---

[56] *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex. 1985) ("In contrast to a severance, separate trials are interlocutory, and are not final and appealable until all the separated claims and issues in the suit have been litigated."); *Hall*, 450 S.W.2d at 838 ("The order entered at the conclusion of a separate trial is often interlocutory, because no final and appealable judgment can properly be rendered until all of the controlling issues have been tried and decided.").  The Legislature has authorized permissive appeals from certain interlocutory orders that are "not otherwise appealable." TEX. CIV. PRAC. & REM. CODE § 51.014(d).

[57] *See* 927 S.W.2d at 631 (concluding that the "same rule" adopted in *Scurlock* should apply to extracontractual bad-faith lawsuits severed from an insurance-coverage claim); *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) (adopting and quoting Section 13 of the *Restatement (Second) of Judgments* in holding that "a judgment is final for the purposes of issue and claim preclusion 'despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo'"); RESTATEMENT (SECOND) OF JUDGMENTS § 13 & cmt. a (AM. L. INST. 1982) (describing a "final judgment" for issue-preclusion purposes to include "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect" and commenting that "when a judgment in one action is to be carried over to a second action and given a conclusive effect there," "the judgment must ordinarily be a firm and stable one, the 'last word' of the rendering court—a 'final judgment'"); *see also Sanders v. Boeing Co.*, 680 S.W.3d 340, 352 (Tex. 2023) (discussing different meanings of the term "final" as applied to judgments).  The *Akin* dissent also agreed.  927 S.W.2d at 631 (Abbott, J., dissenting) ("The trial on the bad faith claim could proceed after the jury verdict on the breach of contract claim; thus, a trial court would not

We therefore hold that the trial court clearly abused its discretion in denying State Farm's motion to abate Lindsey's extracontractual claims while her UDJA claims are pending in the trial court. To grant relief by extraordinary writ, we must consider the adequacy of an appellate remedy. A trial court's failure to grant a motion to abate usually is an incidental ruling not subject to mandamus.[58] In this unique context, however, no appellate remedy adequately protects the insurer's "substantial right" not to undergo costly discovery and litigation expenses on extracontractual issues that may be wholly

---

have to wait for a party to exhaust its appellate remedies before commencing the trial on the bad faith claim."). Of course, "[a] judgment in a second case based on the preclusive effects of a prior judgment should not stand if the first judgment is reversed." *Scurlock*, 724 S.W.2d at 6. And "under particular facts, a trial court might in some instances have the authority to abate such a suit until all appeals are exhausted" to "advance the ends of justice." *Street v. Hon. Second Ct. of Appeals*, 756 S.W.2d 299, 300, 302 (Tex. 1988) (holding that the trial court did not abuse its discretion in refusing to abate the insured's *Stowers* action while the underlying tort action was pending on appeal); *see* RESTATEMENT (SECOND) OF JUDGMENTS § 16 cmt. b (stating that it may "be advisable for the court that is being asked to apply the judgment as res judicata to stay its own proceedings to await the ultimate disposition of the judgment" on appeal "if the disposition will not be long delayed and especially if there is substantial doubt whether the judgment will be upheld").

[58] *See, e.g.*, *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 412 n.5 (Tex. 2011) (noting that a trial court's failure to grant a motion to abate generally is not subject to mandamus); *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) ("Mandamus review of incidental, interlocutory rulings by the trial courts unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation."). Even so, in determining the adequacy of a remedy by appeal, we are "guided by analysis of principles," not "simple rules that treat cases as categories." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008).

unnecessary depending on the outcome of the UIM-coverage trial.[59]  In addition to protecting substantial rights from impairment or loss, mandamus review may be proper "in select cases to afford appropriate guidance to the law."[60]  In this Court, multiple petitions for mandamus relief are pending that raise this same or a similar legal issue.[61]  Our opinion today provides guidance for these and future cases by establishing an easily administrable sever- or bifurcate-and-abate rule in the UIM context that will promote greater uniformity and predictability.[62]  While we are ever mindful that mandamus review must not be overused, we conclude that in this instance, the benefits outweigh the detriments.

---

[59] *State Farm*, 629 S.W.3d at 876, 878; *see Prudential*, 148 S.W.3d at 136 (noting that mandamus review "may be essential to preserve important substantive and procedural rights from impairment or loss"); *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex. 2004) (describing an appellate remedy as inadequate when "parties are in danger of permanently losing substantial rights" and "the appellate court would not be able to cure the error").

[60] *Liberty Cnty.*, 679 S.W.3d at 177; *see Prudential*, 148 S.W.3d at 136 (explaining that mandamus review may "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments").

[61] *See* Nos. 23-0945, *In re State Farm Mut. Auto. Ins. Co.*; 23-0973, *In re State Farm Mut. Auto. Ins. Co.*; 23-0975, *In re State Farm Mut. Auto. Ins. Co.*; 23-0977, *In re State Farm Mut. Auto. Ins. Co.*; 24-0172, *In re State Farm Mut. Auto. Ins. Co.*; 24-0215, *In re State Farm Mut. Auto. Ins. Co.*; 24-0658, *In re State Farm Mut. Auto. Ins. Co.*; 24-0972, *In re State Farm Mut. Auto. Ins. Co.*; 24-1032, *In re USAA Ins. Agency, Inc.*; 25-0126, *In re Progressive Cnty. Mut. Ins. Co.*

[62] *See United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 637 (Tex. 2023) ("We should strive throughout the law for easily administrable bright-line rules, which can be followed by parties with confidence and applied by judges with predictability.").

## C. Proportionality

We now turn to State Farm's proportionality complaints. Generally, a party to a suit has the right to depose the opposing party.[63] State Farm does not contest Lindsey's entitlement to depose its representative on the extracontractual matters *after* obtaining a favorable judgment on her UDJA claims. But it argues that at this stage, the deposition would provide little benefit, if any, in relation to its cost because State Farm has produced the nonprivileged information it possesses relating to Lindsey's car crash and injuries and submitted evidence supporting both its lack of personal knowledge and the burden of the proposed discovery. On this record, we agree.

In evaluating the likely benefit of the proposed deposition in relation to its burden or expense, we first look to the proper scope of discovery. As a general rule, a party may obtain discovery regarding any unprivileged matter that is relevant to the subject matter of the pending action.[64] But discovery "may not exceed the bounds of the claims at issue."[65] Because we have determined that the extracontractual claims must be abated, Lindsey may not obtain discovery on these claims "under the guise of investigating a claim for benefits."[66] And through its stipulations, State Farm has narrowed the

---

[63] *USAA II*, 624 S.W.3d at 790.

[64] *See* TEX. R. CIV. P. 192.3(a). This includes information that "will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

[65] *USAA II*, 624 S.W.3d at 791.

[66] *Id.*

disputed UDJA issues to Pantoja's liability and the existence and amount of Lindsey's damages.[67] That said, a party's "legal contentions and the factual bases for those contentions" are discoverable,[68] although this "does not require more than a basic statement of those contentions and does not require a marshaling of evidence."[69] And when insurers "investigate their insureds' claims, they uncover, or at least may uncover, information relevant to those claims and the [insurer]'s own defenses."[70]

"[T]he simple fact that requested information is discoverable," however, "does not mean that discovery must be had."[71] Even when discovery seeks relevant and nonprivileged information, courts should "make an effort to impose reasonable discovery limits."[72] In that vein,

---

[67] *See id.* at 788 ("And where, as here, the UIM carrier stipulates that the plaintiff was insured for UIM benefits and the accident was a covered occurrence under the policy, the coverage trial resembles a 'typical car wreck' case involving the other motorist's liability for the underlying car accident and the existence and amount of the insured's damages."). State Farm's motion to quash also states that it "is not currently contending that Plaintiff was at fault in the accident, or that she has recovered $50,000 on her third-party claim against the other driver."

[68] TEX. R. CIV. P. 192.3(j).

[69] *Id.* cmt. 5.

[70] *USAA II*, 624 S.W.3d at 789; *see id.* at 791 ("Presumably, [the insurer] is in possession of information that supports its position on those issues, even if gleaned second-hand.").

[71] *State Farm Lloyds*, 520 S.W.3d at 605 (quoting *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)).

[72] *Id.* at 604 (quoting *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003)).

our rules subject discovery to a "proportionality overlay."[73]  As Rule 192.4 instructs, discovery methods "should" be limited if (1) "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive" or (2) "the burden or expense of the proposed discovery outweighs its likely benefit."[74] These proportionality complaints are determined on a case-by-case basis and must be supported with evidence, not conclusory allegations.[75]

In *USAA II*, we provided a roadmap for how a UIM insurer could support its proportionality concerns in moving to quash a corporate-representative deposition notice:

> [The insurer] could have disclosed documents, or referenced previously disclosed documents, providing the information in its possession regarding the liability and damages issues in the case.  That information, combined with [the insurer]'s lack of personal knowledge of any relevant facts, could show that a corporate representative's deposition would provide little if any additional benefit in relation to the cost.[76]

---

[73] *Id.* at 599.

[74] TEX. R. CIV. P. 192.4.

[75] *USAA II*, 624 S.W.3d at 792.

[76] *Id.* at 792-93.  After our decision, two courts of appeals have held that the trial court abused its discretion in failing to quash the corporate-representative deposition notice of a UIM insurer when the insurer followed this roadmap.  *See In re Hartford Cas. Ins. Co.*, No. 01-22-00926-CV, 2023 WL 4565997, at *5-6 (Tex. App.—Houston [1st Dist.] July 18, 2023, orig. proceeding); *In re Home State Cnty. Mut. Ins. Co.*, No. 05-21-00873-CV, 2022 WL 1467984, at *4 (Tex. App.—Dallas May 10, 2022, orig. proceeding [mand. denied]).

State Farm did precisely that, producing over a thousand pages from its nonprivileged claim file, including a certified copy of the insurance policy, correspondence between the parties, and Lindsey's medical records and bills. In an unsworn declaration under penalty of perjury,[77] State Farm's claim specialist, Dauper, verified that the production consisted of the "entire, unprivileged claim file."[78] As to State Farm's personal knowledge of the issues, Dauper averred that State Farm had neither witnessed the vehicle accident nor treated Lindsey's alleged injuries.

To demonstrate the burden and cost of the proposed deposition, Dauper detailed what would be required for a corporate representative

---

[77] "[B]y statute, 'an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law' as long as it is 'subscribed . . . as true under penalty of perjury.'" *Tex. Dep't of Pub. Safety v. Caruana*, 363 S.W.3d 558, 564 (Tex. 2012) (quoting TEX. CIV. PRAC. & REM. CODE § 132.001(a), (c)(2)).

[78] In his declaration, Dauper stated that the withheld information "is privileged pursuant to the attorney-client, work-product, and consulting expert privileges." *See* TEX. R. CIV. P. 193.3(a) (providing that privileges may be asserted in a separate document for the purpose of withholding privileged material). Lindsey complains that State Farm did not produce a privilege log and that no court has determined whether the withheld documents in the claims file are privileged. But our rules place the burden on the party seeking discovery to request a privilege log, and any party may request a hearing for the court to determine the validity of a privilege claim. *See* TEX. R. CIV. P. 193.3(b) ("After receiving a response indicating that material or information has been withheld from production, a party seeking discovery may serve a written request that the withholding party identify the information and material withheld."), 193.4(a) ("Any party may at any reasonable time request a hearing on an objection or claim of privilege asserted under this rule."), 199.2(b)(5) ("When the witness is a party or subject to the control of a party, document requests under this subdivision [relating to the procedure for noticing oral deposition] are governed by Rules 193 and 196.").

to prepare for and speak on State Farm's behalf.[79]  The representative would need to (1) review voluminous documents in consultation with experts to opine on Lindsey's damages, (2) meet with State Farm's counsel to be prepared to discuss State Farm's legal theories and defenses, and (3) forgo worktime to prepare, sit for the deposition, and review and correct the deposition transcript.  Based on his personal experience, Dauper estimated that the proposed deposition would burden State Farm with a loss of "18 additional [employee]-hours" and cost "approximately $4,000 in attorneys' fees."[80]

Consistent with the *USAA II* roadmap, we conclude here that (1) much of the information Lindsey seeks by deposition would be unreasonably cumulative or duplicative of the documents already produced, including the entire nonprivileged case file, and (2) given State Farm's lack of personal knowledge on the narrowed issues, any likely benefit of the proposed deposition is outweighed by the demonstrated burden and expense of the proposed discovery.[81]  Although the burden rests with the party opposing discovery to support proportionality complaints with evidence, we have also said that "the party seeking discovery must comply with proportionality limits on

---

[79] Dauper also discussed the time-consuming process of selecting a corporate representative that "involves internal discussions and meetings, review of claim information and lawsuit information, review of [the] document production . . . and discussions with counsel."

[80] To provide these estimates, Dauper relied on his personal knowledge as a claim specialist who has reviewed the documents and pleadings in this case and served as a corporate representative in a UIM-related lawsuit in the past.

[81] *See* TEX. R. CIV. P. 192.4.

26

discovery requests and 'may well need to . . . make its own showing of many or all of the proportionality factors.'"[82]   Lindsey's primary argument is that she needs to know State Farm's legal and factual contentions regarding the extracontractual claims before a single bifurcated trial, a theory we have already rejected.   Alternatively, Lindsey asserts that State Farm did not address "the portion of the deposition notice that seeks information concerning 'the amount and basis for its valuation of Lindsey's damages.'"   But Dauper directly discussed this issue, explaining:

- State Farm did not "treat [Lindsey]'s alleged injuries" and "will rely on medical experts to provide testimony and opinions concerning the nature, extent, and causation as to [Lindsey]'s injuries and damages" based on "documents obtained from third-parties," which have already been produced;

- any information State Farm currently possesses on this topic that has not been produced "is privileged pursuant to the attorney-client, work-product, and consulting expert privileges";

- "[t]o be able to speak to and bind [State Farm]," the representative would need to review "hundreds of pages of medical records about which any corporate representative would need to consult with a medical expert to understand"; and

---

[82] *State Farm Lloyds*, 520 S.W.3d at 614 (quoting *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468-69 (N.D. Tex. 2015)).  These factors consist of (1) the likely benefit of the requested discovery, (2) the needs of the case, (3) the amount in controversy, (4) the parties' resources, (5) the importance of the issues at stake in the litigation, (6) the importance of the proposed discovery in resolving the litigation, and (7) any other articulable factor bearing on proportionality.  *Id.* at 608-12; TEX. R. CIV. P. 192.4(b).

27

- deposing State Farm's designated medical experts would be a better source of this information.[83]

Put another way, to the extent information regarding the amount and basis of State Farm's damages valuation is not privileged, this discovery "is obtainable from some other source that is more convenient, less burdensome, or less expensive."[84]

In sum, the proposed deposition is not proportional to the needs and circumstances of the case at this stage of the proceeding. We therefore hold that the trial court abused its discretion in failing to quash the deposition notice while Lindsey's UDJA claims are pending. Because the trial court allowed discovery that exceeds the permissible scope under Rule 192.4, State Farm lacks an adequate appellate remedy and is entitled to mandamus relief.[85]

### III. Conclusion

In the distinctive UIM context, a party to the suit may invoke the sever- or bifurcate-and-abate rule described above and is entitled to its application when the insurer had offered to settle the insured's claim for UIM benefits, the insured has not yet obtained a judgment establishing UIM coverage, and the insured's extracontractual claims seek damages that are dependent on the right to receive UIM benefits. After applying

---

[83] At the hearing on its motion to quash, State Farm's counsel stated that it has "made those experts available for deposition."

[84] TEX. R. CIV. P. 192.4(b).

[85] *USAA II*, 624 S.W.3d at 787 (holding that a party lacks an adequate appellate remedy when a "discovery order authorizes a deposition that exceeds the permissible scope" of our rules); *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (holding that mandamus relief is the proper remedy when a discovery order compels production beyond the rules of procedure).

that rule, a trial court should grant an insurer's motion to quash the deposition notice of its corporate representative during the UIM-coverage portion of the action if the insurer has stipulated to the matters within its personal knowledge, produced the nonprivileged documents in its possession that relate to the insured's car crash and damages, and submitted evidence supporting its proportionality complaints and lack of personal knowledge regarding the disputed issues for the initial car-crash trial. Because State Farm has done so here, we conditionally grant its petition for writ of mandamus and order the trial court to (1) vacate its orders denying State Farm's motions to abate the extracontractual claims and to quash the corporate-representative deposition notice and (2) grant those motions. Our writ will issue only if the trial court fails to comply.

John P. Devine
Justice

**OPINION DELIVERED:** April 25, 2025

29